# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# ANDERSON DIVISION

| | |
|---|---|
| LM INSURANCE CORPORATION, an Illinois corporation, | CASE NO. 8:18-cv-03587-DCC |
| Plaintiff, | **COMPLAINT** |
| v. | |
| COE'S ROOFING OF ANDERSON, LLC, a South Carolina limited liability company and DEBRA WEATHERLY, individually, | **TRIAL BY JURY DEMANDED** |
| Defendants. | |

Plaintiff, LM INSURANCE CORPORATION ("LMIC"), by and through undersigned counsel, sues COE'S ROOFING OF ANDERSON, LLC ("COE'S"), a South Carolina limited liability company and DEBRA WEATHERLY ("WEATHERLY"), individually, and says as follows:

## INTRODUCTION

1. This is an action by LM INSURANCE CORPORATION against the Defendants COE'S ROOFING OF ANDERSON, LLC and DEBRA WEATHERLY for breach of contract, breach of contract with a fraudulent act, and for specific performance with regard to COE'S failure to pay workers' compensation insurance premiums on insurance policies issued to COE'S by LMIC. The insurance coverage commenced November 18, 2014 and ended on October 26, 2017. LMIC is owed in excess of $523,000.00 in damages.

## JURISDICTION AND VENUE

2.  Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332, in that the amount in controversy is in excess of $75,000 and the parties are citizens of different States.

3.  Venue is proper in this United States District Court in that the Defendant COE'S is a limited liability company registered to do business in South Carolina and has its principal place of business in Anderson, South Carolina.  Ms. WEATHERLY is the sole and controlling owner of COE'S and is a South Carolina citizen domiciled in Anderson, South Carolina.

## PARTIES

4.  The Plaintiff LM INSURANCE CORPORATION is an Illinois corporation with its principal place of business in Boston, Massachusetts.  LMIC is licensed and authorized to provide workers' compensation insurance in South Carolina.

5.  The Defendant COE'S ROOFING OF ANDERSON, LLC is a limited liability corporation duly licensed, at all times pertinent hereto, to conduct business in the State of South Carolina.  Its principal place of business is in Anderson, South Carolina.

6.  The Defendant DEBRA WEATHERLY is a citizen of South Carolina, domiciled in Anderson, South Carolina and is the sole and controlling member/owner of COE'S ROOFING OF ANDERSON, LLC.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

7.  With few exceptions, South Carolina mandates all employers purchase workers' compensation insurance.

8.  Some South Carolina employers are unable to secure workers' compensation insurance in the voluntary market.  South Carolina has a residual market to assure the availability of workers' compensation insurance coverage to all.  The South Carolina Workers'

Compensation Insurance Plan ("Assigned Risk Plan" or "Plan") is the state's residual risk market mechanism for workers' compensation insurance coverage and is administered by the National Council on Compensation Insurance ("NCCI").

9. The Assigned Risk Plan exists for high-risk employers and those employers who cannot obtain workers' compensation insurance in the voluntary market.

10. In order to apply for coverage under the Assigned Risk Plan, an employer must submit a written application to the NCCI along with an estimated premium deposit based primarily upon information known only by the employer seeking coverage.

11. The standard application form for insurance under the Assigned Risk Plan, must be completed by the employer. The application requires: (a) complete underwriting information including truthful payroll estimates; (b) a statement the employer will maintain a complete record of payroll transactions in such form as the insurance company may reasonably require, and such record will be available to the insurance company; (c) a statement the employer will comply with all reasonable recommendations of the insurance company relating to the welfare, health and safety of employees; and (d) payment of the appropriate deposit premium. Plan rules require the applicant provide accurate and complete information in the application.

12. Upon receipt of the application and payment of the premium deposit, NCCI randomly designates one of the Assigned Risk Plan insurance carriers to issue a policy of insurance in its name to the employer.

13. There is no underwriting prior to the assignment of the coverage to the assigned risk carrier. The Plan administrator binds coverage on behalf of the carrier when the coverage is assigned to one of the Plan insurance companies.

14. The employer's actual premium must match the risk being insured. The premium stated on the initial policy of insurance is based on the information provided by the applicant/employer in the application to the Plan.

15. Premium for workers' compensation insurance is based upon the amount of the payroll of the insured and the type of work conducted by the employees of the insured.

16. As some jobs and industries are more hazardous than others, the premium rate varies by job classification.

17. The premium rates charged by the workers' compensation insurance company are set by the State of South Carolina.

18. An insured's Plan policy covers all of the employees of the insured and all uninsured subcontractors.

19. The insured and its books and records are subject to audit by the assigned insurance carrier.

20. Premium due under the policies may be revised based upon audit.

21. The final determination of premiums owed by the insured is determined after the insurer conducts its final audit, which per the terms of the policy may be up to three years after the conclusion of the policy period.

22. The Plan rules govern the employers who buy insurance through the Plan, the insurance companies which sell such insurance under the Plan, and the conditions by which such insurance is provided in the State of South Carolina.

23. The Plan serves a public service of providing workers' compensation insurance for those that might not otherwise be able to obtain such insurance, so that all employers in South Carolina can continue to employ others in gainful employment.

24. The Plan is approved by, and subject to the rules and regulations imposed by, the Department of Insurance for South Carolina.

25. The Plan was in effect at all times pertinent to this Complaint.

26. On or about November 19, 2014, NCCI received an application for South Carolina assigned risk workers' compensation insurance from COE'S for employees working in South Carolina. *See Exhibit A*.

27. NCCI assigned the coverage to LMIC, which issued workers' compensation Policy WC5-35S-543827-014 (the "014 Policy"), effective 11/18/14 to 11/18/15. *See Exhibit B*[1].

28. Successive Policies were issued by LMIC as follows: WC5-35S-543827-025 (the "025 Policy") *Exhibit C*, with effective dates of 11/25/15 to 11/18/16; WC5-35S-543827-026 (the "026 Policy") *Exhibit D*, with effective dates of 11/18/16 to 11/18/17 but cancelled due to non-payment effective 01/14/17; WC5-35S-543827-037 (the "037 Policy") *Exhibit E*, effective 01/25/17 to 11/18/17 but cancelled effective 05/03/17 due to non-payment.

29. On or about August 8, 2017, NCCI received an application for South Carolina assigned risk workers' compensation insurance on behalf of COE'S for employees working in South Carolina. *See Exhibit F*.

30. NCCI, pursuant to Plan rules, again assigned the workers' compensation coverage to LMIC, which in turn issued workers' compensation Policy WC5-39S-374845-017 (the "017 Policy) *Exhibit G*, with effective dates of 08/09/17 to 08/09/18. The 017 Policy was cancelled effective 10/26/17 due to non-payment and failure to comply with the audit process.

---

[1] A complete copy of the Exhibit B Policy is attached hereto. For the Exhibits C, D, E and G policies, only the Declaration pages are attached. Complete copies of the policies will be produced to the Defendant upon request. LMIC represents the contract terms are the same for each policy.

31. The Policies, exhibits B, C, D, E and G, are the contracts between the parties for insurance coverage.

32. LMIC has met its obligations under the five (5) policies of insurance.

33. WEATHERLY personally authorized, participated in, and directed each action taken by COE'S as alleged herein.

34. In order to obtain insurance coverage for its workers, COE'S through its principal WEATHERLY intentionally submitted an application on November 18, 2014 that grossly underreports the amount of payroll and the amount of payroll in each job classification for which insurance was sought.

35. The application also failed to disclose the relationship of COE'S to a business previously operating out of the same address and the relationship of COE'S to subcontractors.

36. The information on the application was reasonably relied upon by LMIC to generate the premium calculation for the first policy (014 Policy).

37. As a result of the false information provided by COE'S, it was able to secure compensation coverage at a price substantially discounted from the price it should have paid had the application information been accurate.

38. When a preliminary audit was conducted in January 2015, COE'S, through WEATHERLY continued to misrepresent the payroll and its operations.

39. In a mail-in audit dated November 29, 2016 signed by WEATHERLY, and submitted on behalf of COE'S, the amount of payroll was grossly and intentionally mispresented. At the time, LMIC relied upon the information in the mail-in audit and adjusted the amount of premium due on the policy in reasonable reliance on COE'S representations.

40. By the time of the mail-in audit, the 026 Policy, (a renewal of the 025 policy), was already in place. The mail-in audit information was used by LMIC to adjust the premium due on the 025 policy.

41. On December 21, 2016, COE'S and its insurance agent, asked LMIC to amend the policy to reflect a reduced amount of roofing payroll, reducing the exposure by $20,000.

42. LMIC relied on the requested amendment as a statement of the actual payroll and changed the 026 Policy accordingly, giving COE'S an adjustment downward on the amount of premium due on the policy. COE'S failed to pay the balance due and the policy was cancelled.

43. The coverage was reinstated after subsequent payment by COE'S. The 037 Policy was issued commencing January 25, 2017. The 037 Policy was cancelled due to non-payment.

44. In a mail-in audit dated May 29, 2017, signed by WEATHERLY, and submitted on behalf of COE'S, the amount of payroll was grossly and intentionally mispresented.

45. WEATHERLY, on behalf of COE'S, made a subsequent application to the Plan for assigned risk coverage on August 8, 2017. On the application, COE'S through WEATHERLY, again intentionally underreported the amount of payroll and the amount of payroll in each job classification for the operations of COE'S.

46. LMIC was required by the Plan to provide coverage for COE'S. LMIC issued the 017 policy effective August 9, 2017.

47. By the time of the second application, LMIC had attempted a physical audit of COE'S books and records. In the process, LMIC obtained a copy of the 2016 Federal tax return on which COE'S reported over $2,000,000 of gross revenue earned in 2016.

48. Normally, over $2,000,000 in gross revenue in a roofing operation would not be feasible with the amount of payroll or subcontract labor that COE'S had reported to LMIC.

49. For the 017 Policy, COE'S was billed accordingly for a payroll amount which would have been expected for a roofing business the size and scope of the COE'S operation based on the 2016 gross revenues.

50. The information regarding payroll and worker classifications supplied by COE'S is known to be inaccurate and incomplete and was intentionally supplied by COE's and WEATHERLY in an effort to obtain insurance coverage at a reduced rate.

51. LMIC made repeated attempts to get correct information, correct payroll ledgers, and all related banking information from COE'S. In each instance, COE'S and WEATHERLY refused LMIC access to all of the books and records related to the business operations of COE'S and only supplied partial and inaccurate data.

52. Based upon limited and inconsistent payroll documentation received from COE'S and LMIC's audit parameters based on the known information, LMIC adjusted its previous audits and determined that premium due and owing from COE'S is as follows:

> 014 Policy - $327,063.08
> 025 Policy - $195,280.61
> 026 Policy - $-0-
> 037 Policy - $     909.12
> 017 Policy – Amount as yet Unknown

53. As a result of COE'S and WEATHERLY'S intentional withholding of vital documents and information and its submission of fraudulent documents, COE's was able to obtain and maintain workers' compensation coverage by paying a reduced premium rate.

54. The sums for unpaid premium claimed by LMIC are due pursuant to the contracts of insurance.

55. LMIC is entitled to obtain correct information and have access to COE'S business records to complete the workers' compensation audits per the terms of the Policies insurance.

## COUNT I - BREACH OF CONTRACT – AGAINST COE'S

LMIC realleges Paragraphs 1 through 55 above, and incorporates those paragraphs by reference as if fully set forth herein.

56. LMIC provided COE'S with workers' compensation insurance coverage in South Carolina from November 2014 to October 2017, as set forth above.

57. LMIC in all respects met its obligations under the contracts of insurance, as set forth in the Policies referenced above.

58. COE'S obtained the benefit of having this insurance coverage provided by LMIC but has failed to pay LMIC for same. One such benefit to COE'S was its ability to operate its business activities in the state of South Carolina because it held the necessary coverage to do so.

59. Pursuant to the terms of the policy, COE'S, was required to make its complete books and records available to perform audits of its records to determine, *inter alia*, the correct amount of payroll and classification of payroll for proper calculation of insurance premium due to LMIC.

60. COE'S, in violation of its obligations and promises under the Policies, failed to provide adequate books and records to LMIC.

61. Despite the inadequacy of the records, LMIC, pursuant to the Policy contract, calculated the premium due by COE'S, based upon the information made available to LMIC.

62. COE'S agreed to pay all premiums when due in Part V of the Policies. COE'S was obliged to make payment of the full amount of the annual premium at or before the inception of the policy. COE'S has breached its obligation to pay all premium when due.

63. As a result of the breaches of contract, LMIC has incurred damages in an amount which exceeds $523,000.00.  LMIC believes the amount due for premium will increase once the complete financial records of COE'S are provided through discovery.

WHEREFORE, LMIC requests this Court enter judgment in favor of LM INSURANCE CORPORATION and against COE'S ROOFING OF ANDERSON, LLC for damages, together with prejudgment interest, costs of this action, and for such other and further relief as this Court may deem right and just.

### COUNT II - BREACH OF CONTRACTS WITH FRAUDULENT ACT–
### AGAINST COE'S AND WEATHERLY

LMIC realleges Paragraphs 1 through 55 above, and incorporates those paragraphs by reference as if fully set forth herein.

64. LMIC provided COE'S with workers' compensation insurance coverage in South Carolina from November 2014 to October 2017, as set forth above.

65. LMIC in all respect met its obligations under the contracts of insurance.

66. WEATHERLY the owner and operator of COE'S, personally authorized, participated in, and directed each act and omission that LMIC alleges as to COE'S.

67. COE'S obtained coverage provided by LMIC but has failed to pay for same.

68. COE'S agreed to pay all premiums when due in Part V of the Policy.

69. COE'S breached its obligation under the contracts of insurance to supply complete and accurate information concerning COE'S operations and to pay premium when due.

70. COE'S intentionally engaged in fraudulent acts accompanying the breaches in order to fraudulently decrease COE'S financial obligation to LMIC.

71. COE'S, at WEATHERLY's direction, engaged in repeated acts of dishonest conduct and unfair dealing during the period of the policy contracts through deliberately

concealing pertinent financial information (e.g. payroll, income, bank accounts, etc.) that COE'S was required to provide LMIC and by supplying incorrect information to LMIC's auditors.

72. COE'S and WEATHERLY, intentionally misrepresented the size and scope of COE'S operations and true amount of payroll in the applications for insurance and the mail-in audits submitted by WEATHERLY, and during the actual audits conducted by LMIC.

73. COE'S made these misrepresentations with the intent LMIC would rely upon same to its detriment, for the purpose of decreasing COE'S financial obligation to LMIC.

74. LMIC justifiably relied on COE'S and WEATHERLY's dishonest material misrepresentations and omissions.

75. As a result of the breaches of contract with a fraudulent act, LMIC has incurred damages in excess of $523,000.00. The exact sum owed to LMIC will be determined through discovery in this matter.

WHEREFORE, LMIC requests this Court enter judgment in favor of LM INSURANCE CORPORATION and against COE'S ROOFING OF ANDERSON, LLC and DEBRA WEATHERLY for actual damages, punitive damages, together with prejudgment interest, costs of this action, and for such other and further relief as this Court may deem right and just.

## COUNT III
## SPECIFIC PERFORMANCE AGAINST COE'S

LMIC realleges Paragraphs 1 through 55 above, and incorporates those paragraphs by reference as if fully set forth herein.

76. The information provided by COE'S and WEATHERLY on the two applications, on the two mail-in audits, and in the physical audit conducted by LMIC was grossly inconsistent.

77. The records produced by COE'S during LMIC's attempts to conduct the audits indicate there are at least two other bank accounts used by COE'S as part of the business.

78. The records obtained from COE'S during LMIC's attempts to audit COE'S books and records reflect that almost all employees were paid in cash, indicating the existence of records of these cash transactions not yet produced to LMIC.

79. The insurance policies provide "[t]he final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classification and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance …". (*Exhibit B, Part Five, ¶ E*).

80. Paragraph G of Part Five authorizes Plaintiff to audit Defendant's records for a three-year period after the policy period ends in order to calculate the final premium. "We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium." (*Exhibit B, Part Five, ¶ G*).

81. The Plaintiff has endeavored to comply with the collection of information needed to complete the audit provisions of the policies of insurance and the Plan, but the Defendant COE'S refuses to perform or permit the required audits of all records to occur.

82. Plaintiff has made due demand on Defendant COE'S to perform, but the Defendant has, without just cause, refused to do so.

83. Until LMIC receives a complete set of audit documents from which it can ascertain the true and accurate payroll and operations of COE'S, LMIC will continue to have no adequate remedy at law.

WHEREFORE, Plaintiff LM Insurance Corporation requests this Court compel Defendant COE'S to provide full and complete compliance with the audit requirement, per both

the terms and conditions of the insurance policies and the rules and regulation of the Assigned Risk Plan, and compel the documentation not already obtained by Plaintiff pursuant to the audit provisions of the contracts of insurance.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Dated:  December 27, 2018

                              Respectfully submitted,

                              /s/ Mark A. Cullen

                              _____
                              Mark A. Cullen, Esq.
                              South Carolina Bar No. 16170
                              South Carolina Fed. Id. No. 9621
                              The Cullen Law Firm, P.A.
                              *Attorney for Plaintiff LMIC*
                              Clearlake Plaza
                              500 S. Australian Avenue, Suite 543
                              West Palm Beach, FL  33401
                              Telephone:  561.640.9191
                              Facsimile:  561.214.4021
                              E-mail:  mailbox@cullenlawfirm.net